*[handwritten: No Parties added / No New Summons issued]*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――X

**GRYPHON DEVELOPMENT LLC,**

            Plaintiff,

- against -

**TOWN OF MONROE,**

            Defendant.
―――――――――――――――――――――――X

**FIRST AMENDED CIVIL COMPLAINT**

**08 CV 3252 (WCC)**

ECF CASE

***TRIAL BY JURY DEMANDED***

**AS AND FOR THE PLAINTIFF'S FIRST AMENDED COMPLAINT HEREIN GRYPHON DEVELOPMENT LLC THROUGH ITS ATTORNEY DOES HEREBY ALLEGE AS FOLLOWS:**

**I**
**THE NATURE OF THIS ACTION**

1. This is an action brought under the authority of the federal civil rights act (42 USC §1983) seeking compensatory damages resulting from the refusal of the Defendant Town to grant the Plaintiff Gryphon's petition to the Town made under NY TL §190 to extend the boundaries of Town of Monroe Sewer District No. 8 to include property owned by Gryphon, known as the Auchard Tract, and thereby afford Gryphon sewer service for that tract of land. The gravermen of Gryphon's complaint is that the Town has awarded permits to use the District facilities to others outside its boundaries under circumstances that were virtually identical to that of Gryphon and, notwithstanding, has arbitrarily and deliberately refused to do so for Gryphon by extending the District boundaries to include the Auchard Tract. As such, Gryphon comes to this Court as a "class of one" (*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)) and alleges that it has been denied equal protection of the laws guaranteed

1

to it by the Fourteenth Amendment to the Constitution resulting in monetary damages to it.

## II
## TERMS AS USED HEREIN

2. The following terms shall have the following meaning as used herein:

| | |
|---|---|
| The Auchard Tract | A 4.9 acre unimproved parcel owned by Gryphon formerly owned by Victor Auchard acquired by Gryphon in January 2004, located on Walton Terrace and Ridge Road in the Walton Lake section of the Town and being in the water and drainage sheds of Walton Lake, shown on the Town of Monroe tax map as an combination of Lots 14-2-5, 6.1 and 6.2. |
| The Ajjan Lot | A 170' $\pm$ x 100' $\pm$ building lot abutting the District located on the northeast side of Walton Terrace in the Walton Lake area of the Town shown on the Town of Monroe tax map as parcel 14-1-13 immediately adjacent to the Auchard Tract also being in the water and drainage sheds of Walton Lake. |
| The Dierna Lot | A 113' $\pm$ x 80' $\pm$ building lot located on Lake Avenue abutting the District in the Walton Lake area of the Town shown on the Town of Monroe tax map as parcel 18-2-2.2 also located in the water and drainage sheds of Walton Lake. |
| The District | Town of Monroe Sewer District No. 8 formed by the Town Board pursuant to its Order of September 12, 1977 adopted under the authority of NY TL §209-e encompassing lands in the water and drainage sheds of Walton Lake. |
| Gryphon | Gryphon Development LLC, the Plaintiff herein with offices at 116 Old Acres Road, Saddle River, NJ, 07458 being a limited liability corporation formed under the laws of New York being in the business of developing and improving real property for sale to the general public and in particular the Auchard Tract. |
| Mombasha Lake | A 200 $\pm$ acre water body located in southerly section of the Town of Monroe being the potable water supply for the Village of Monroe. |

| | |
|---|---|
| The Moodna Basin Group | A consortium of five municipalities (the towns of Monroe, Chester, Woodbury and Blooming Grove and the Village of Chester) acting together under an intermunicipal agreement pursuant to Article 5G of the NY GML for the purpose of purchasing sewage treatment capacity at the STP from Orange County to treat and dispose of sewage collected by those municipalities in several sewage districts formed by those municipalities, all under a joint contract between the Group and Orange County. |
| Orange County | A municipal corporation of the State of New York having the power, through its duly elected legislative body, to establish part county sewer districts and to enter into contracts with other sewer districts to accept and treat sewage effluent from such districts all pursuant to NY CL §265 and applicable sections of the Orange County Charter and Administrative Code. |
| Orange County Sewer District No. 1 | A part county sewer district (both collection and treatment) formed by the Orange County Legislature in 1973 pursuant to Article 5-A of the NY County Law serving the Villages of Monroe, Harriman and Kiryas Joel and a portion of the Town of Monroe. |
| Outside User Agreements | Agreements entered into by the Town Board between 1978 and 2004 with various property owners whose properties are adjacent or near to the boundaries of the District (and similar Town sewer collection districts), which properties were left out of the District because of inadvertence or oversight. Said agreements afford those properties sewer service via the facilities of the District upon certain terms i.e. that the property owners pay the same sewer service charges as the properties in the District and that they provide all necessary connection infrastructure at their own cost. Some of these agreements are in writing and some are not. |
| Outside User Permits | The permission to use the facilities of the District granted by the Town as a result of outside user agreements are known as and referred to herein as "outside user permits". |
| The Peluso-Trisci Lot | A 175' ± x 100' ± building lot abutting the District located on the northeast side of Walton Terrace in the Walton Lake area of the Town and shown on the Town of Monroe tax map as parcel 14-1-23 about 250' ± westerly of the Auchard Tract. |

3

| | |
|---|---|
| The Petition | A formal petition made by Gryphon to the Town Board pursuant to the provisions of NY TL §190 to expand the boundaries of the District to include the Auchard Tract. |
| The STP | The sewage treatment plant serving Orange County Sewer District No. 1 located on the banks of the Ramapo River in the Village of Harriman, Orange County, NY. |
| The Town | A municipal corporation of the State of New York located in the southerly section of Orange County NY formed by the New York Legislature on March 1, 1799. |
| The Town Board | The duly elected legislative body of the Town having the power to form and extend sewer districts pursuant to NY TL Articles 12 and 12A and to enter into contracts with other sewer treatment providers and, as well, to agree to collect and treat sewage from properties located outside of the District all pursuant to NY TL §198. |
| Walton Lake | A 125± acre water body located in the southwestern section of the Town of Monroe being a potable water supply for the Village of Chester, Orange County, NY. |

## III
## THE PARTIES

3. The Plaintiff Gryphon is a limited liability corporation formed under the laws of New York having its principle place of business at 16 Old Acres Road, Saddle River, NJ 07458 and is the fee owner of the Auchard Tract.

4. The Defendant Town is a municipal subdivision of the State of New York having its principle place of business at 11 Stage Road, Monroe, Orange County, NY 10950

## IV
## FACTUAL ALLEGATIONS

### i. The Auchard Tract

5. Gryphon is the owner in fee of the Auchard Tract.

6. Gryphon purchased the Auchard Tract in January 2004 with the intent to develop it with seven residential housing units to be sold to the general public.

7. The Auchard Tract is located in close proximity to the westerly shore of Walton Lake and is within the water and drainage sheds of that lake and reservoir.

### ii. The Formation of Town of Monroe Sewer District No. 8

8. On or about September 12, 1977 pursuant to the provisions of NY TL §194 and by its Order of that date, the Town formed Sewer District No. 8.

9. The District encompasses lands, among others, located on the west side of Walton Lake and within the water and drainage shed of that reservoir.

10. The expressed purposes by the Town Board when forming the District in 1977 was to protect the waters of Walton Lake from sewage effluent leeching into that reservoir from existing and future septic systems located within its water and drainage sheds.

11. The Auchard tract, while not in the District, abuts it along its northeasterly boundary.

12. Because of simple inadvertence by the Town Board in 1977 the Auchard tract and other lands around that tract also located in the water and drainage shed of Walton Lake were not included within the bounds of the District when it was formed.

### iii. The Service Contracts with Orange County

13. The District was formed without a sewage disposal plant of its own.

14. The District, along with certain other sewer districts in the Town, was formed with the intent of collecting the untreated sewage generated by the residences in the District and transporting the same by means of gravity flow to the nearby sewage collection

5

and treatment facilities of Orange County Sewer District No. 1 for actual treatment. In that sense the District is only a sewage collection district and will be referred to as such hereinafter.

15. On or about September 8, 1978 pursuant to NY TL §198[1](c) the Town, along with several other municipalities in Orange County, NY known as the Moodna Basin Group seeking similar sewer treatment for similar sewage collection districts in their respective municipalities, entered into a contract with Orange County whereby the untreated sewage effluent generated by the District (and another Town sewage collection districts around Mombasha Lake known as Sewer District No. 9) would be transmitted to and treated at the STP, a facility with two million gallons per day of treatment capacity at that time, all at a fixed cost to the respective municipalities in the Moodna Basin Group.

16. Under the aforesaid 1978 contract the Town of Monroe was allocated 133,000 gallons of treatment capacity per day or 6.5% of the overall treatment capacity of the STP at the time.

17. In the summer of 1988 Orange County increased treatment capacity of the STP to four million gallons per day.

18. On or about September 8, 1988, after the 2004 expansion of the STP the Moodna Basin Group (including the Town) and Orange County renegotiated the aforesaid contract and under that renegotiated contract the Town's allocation remained at 133,000 gallons per day of treatment capacity.

### iv. The "Henry Farm" Project

19. On or about November 18, 2000 the Town Board reserved approximately 37,000 gallons of treatment capacity per day from its overall allocation for a project located in the District known as "The Henry Farm", a proposed residential development consisting of 112 ± proposed dwelling units.

20. The Henry Farm project, although receiving preliminary subdivision approval and special permitted use approval from the Town of Monroe Planning Board pursuant to state and local law, has not advanced to the stage of final approval and has not been built.

### v. The "Outside User" Agreements

21. Between the formation of the District in September 1977 and August 2004 the Town has, upon the request of various property owners, extended sewer service via the facilities of the District, as well as Sewer District No. 9 around Mombasha Lake, to numerous properties not in those Town districts but within the water and drainage sheds of both lakes by way of outside user agreements and outside user permits as contemplated by NY TL §198[1](f).

22. On information and belief the number of such outside user agreements and permits for sewer service in the Town are approximately 50.

23. The factual circumstances surrounding the extension of the districts' sewer service to the outside users were as follows: (1) those properties were within the water and drainage sheds of the two reservoirs, (2) those properties had been left out of the original boundaries of the districts either by inadvertence or oversight by the Town when the districts

were originally formed, (3) those properties were extended sewer service by the Town in order to reduce or eliminate the potential of sewage infiltration into the waters of the two reservoirs by way of septic systems leachate, (4) those landowners paid all capital costs needed to make the connection to the same, and (5) those landowners were obligated by the said agreements to pay the same costs for sewer service as properties in the districts.

24. During the year 2004 the Town granted outside user permits and entered into outside user agreements for three undeveloped parcels of land in the immediate vicinity of the Auchard Tract as follows:

> A. On April 12, 2004 for the Dierna Lot (approximately 1/4 mile away from the Auchard Tract).
>
> B. On June 21, 2004 for the Ajjan Lot (adjoining the Auchard Tract).
>
> C. On July 14, 2004 for the Peluso-Trisci Lot (lying within 250' of the Auchard Tract).

25. On information and belief over the last ten years the Town Board made several other outside user agreements and granted outside user permits for several undeveloped building lots.

26. On information and belief the Town has never refused to grant outside user permits and enter into outside user agreements with regard to any request for such relief made between the time the District was formed in September 1977 and its announced policy to suspend the grant of outside user permits, described below, in August 2004.

**vi. The Town's Moratorium on Outside User Agreements and Permits**

27. On August 30, 2004 Councilman Weeks of the Town Board announced that because of concerns about available treatment capacity at the STP at that time it would no

longer entertain any requests for outside user agreements or grant any additional outside user permits for properties regardless of their location in the waters and drainage sheds of either Walton Lake or Mombasha Law or their close proximity to the boundaries of the District.

28. The capacity concerns that were the professed basis of the aforesaid policy decision were not documented or explained at the time of the August 30th policy decision or at any time thereafter.

29. At no time did the Town justify its August 30, 2004 policy position to the public by bringing forth, either in writing or verbally, facts, figures or calculations in support of its determination not to entertain outside user agreements or to issue outside user permits.

### vii. The 2006 Expansion of the STP

30. In summer of 2006 Orange County further expanded the capacity of the STP to six million gallons of treatment capacity per day.

31. That expansion became fully operational or about September 1, 2006.

32. One of the purposes of the 2006 expansion of the STP was to afford and additional one million gallons per day of treatment capacity, not needed by Orange County for its own needs within Orange County Sewer District No. 1, to the several municipalities in the Moodna Basin Group who had expressed a need and desire to purchase such additional capacity for their increased sewage treatment needs in their respective sewage collection districts.

33. The Town of Monroe had theretofore advised Orange County that it desired to purchase such additional capacity for its increased needs in its sewer collection districts.

34. After the 2006 expansion of the STP became operational Orange County, on information and belief, advised the participating municipalities in the Moodna Basin Group that it intended to use the original allocation percentages assigned to the municipalities in the Group as the basis of allocating the additional one million gallons per day of treatment capacity amongst those participating municipalities and charge them accordingly, in proportion to their use, for the costs of the expansion.

35. Under such a formula the Town would receive an additional 65,00 gallons per day of treatment capacity at the STP for a total of 198,000 gallons per day of treatment capacity.

### viii. The Kiryas Joel Litigation

36. The service contract between Orange County and the municipalities in the Moodna Basin Group, including the Town, has not, to date, been revised to reflect the expansion of the STP and the additional treatment capacity made available to the participating municipalities of the Moodna Basin Group and the cost thereof to those municipalities because, on information and belief, of litigation commenced by the Village of Kiryas Joel, a municipality located within Orange County Sewer District No. 1, and not part of the Moodna Basin Group, with respect to the amount of treatment capacity at the expanded STP allocated, or to be allocated, to that village.

37. On information and belief that litigation was commenced in the New York Supreme Court for Orange County by the Village of Kiryas Joel in the December of 2006. Motions by the Village of Kiryas Joel for a temporary and a preliminary injunction restraining Orange County from allocating the aforesaid additional treatment capacity at the STP amongst

10

the participating municipalities of the Moodna Basin Group has been denied by that Court.

38. Notwithstanding the absence of an actual revised contract between the municipalities of the Moodna Basin Group desiring to utilize the aforesaid additional treatment capacity Orange County has made available to those municipalities, including the Town, the increased allocations resulting from the 2006 expansion of the STP with the understanding that the actual cost of providing that increased service is to abide the event of the aforementioned litigation with Kiryas Joel.

39. As a result of the 2006 expansion of the STP there is available to the Town of Monroe treatment capacity at the STP amounting to approximately 198,000 gallons per day.

### ix. Gryphon's Proposed Development of the Auchard Tract

40. As aforesaid, Gryphon purchased the Auchard Tract in January of 2004.

41. As aforesaid, the Auchard Tract is not in the District but abuts its northeasterly boundary.

42. After purchasing the Auchard Tract Gryphon proposed to develop the same into seven building lots to be served by the facilities of the District by way of outside user permits. .

43. Towards that end Gryphon first approached the Town Board in October 2004 seeking such an outside user agreement and outside user permits for the seven lots advising the Board that the flow from its proposed development would be minimal and would not strain the Town's treatment allocation at the STP.

44. Despite numerous such requests made by Gryphon during 2004 and 2005 the Town Board continually refused to entertain Gryphon's request citing its announced policy of August 30, 2004.

### x. Gryphon's Petition to Expand the District

45. As aforesaid, on or about September 1, 2006 Orange County made available to the Town an additional 65,000 ± gallons per day of treatment capacity at the expanded STP.

46. Thereafter, on September 26, 2006, Gryphon filed a formal petition with the Town Board pursuant to NY TL §190 to expand the boundaries of the District to include the Auchard Tract.

47. In conjunction therewith Gryphon filed with the Town Board an engineers report prepared by Edward Maikish, PE, with respect to the expansion of the District as proposed by the Petition (hereafter "the Engineer's Report) as required by NY TL §192.

48. The Petition and the Engineer's Report demonstrated the following facts:

> A. That since its inception in 1977 the District had never exceeded its treatment allocation under any of the service contracts with Orange County.
>
> B. That prior to the 2006 expansion of the STP the District was using only about 100,000 gallons per day of its allotted 133,000 gallons per day treatment capacity per day allocation leaving an actual reserve capacity of about 33,000 gallons of treatment capacity per day.
>
> C. The maximum daily flow from the proposed Gryphon subdivision of the Auchard Tract would be 5,600 ± gallons per day.
>
> D. That as a result of the County's 2006 expansion of the STP the allocation to the Town would not be exceeded by reason of the minimal sewer treatment demands generated by Gryphon's proposed develop-

ment (5,600 gpd) even taking into consideration the capacity theretofore reserved by the Town Board for the unbuilt Henry Farm project.

E. The cost of the expansion including the installation of collector mains and house connections would be the sole cost of Gryphon and not the Town.

49. On March 5, 2007 the Town Board held a public hearing on the Petition as required by NY TL §193.

50. At the public hearing no member of the public rose in opposition to the Petition and, to the contrary, some spoke in favor of the expansion of the District as envisioned by the Petition as being protective of the waters of Walton Lake.

51. On May 19, 2008, more than fourteen months after the close of the public hearing, the Town Board denied the Petition citing a lack of available capacity at the STP as the reason therefore.

## V
## CHARGING ALLEGATIONS

52. Gryphon restates hereat the allegations contained in ¶¶ 1 through 51 hereof with the same force and effect as if they had been set forth in full.

53. At the time Gryphon filed the Petition to expand the District with the Town in September 2006 the Town had (and still does have) available to it sufficient actual as well as reserve treatment capacity at the expanded STP to meet the current and, as well, the known anticipated demands of the District, including the Henry Farm, as well as those of Gryphon as outlined in the Petition.

54. At the time Gryphon filed the Petition, other than the Henry Farm project, there were no lands in the District that had requested sewer service of for which sewer service

was anticipated by reason of plans for development pending before the Town of Monroe Planning Board of other land use agencies.

55. In light of the Town's grant of 50± outside user agreements and permits between September 12, 1977 and August 30, 2004 ,a period of twenty seven years, during a period of time when treatment capacity at the STP was available as it is again after September 1, 2006, it was arbitrary and capricious in the sense meant by *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) and *Clubside v. Nosworthy*, 468 F.3d 144 (2nd Cir., 2006) for the Town Board to have effectively denied Gryphon's extension Petition under the circumstances at hand.

56. The grant by the Town Board of outside user agreements and permits in April, June and July of 2004 for the undeveloped Ajjan, Dierna and the Peluso-Trisci lots which lots, like the Auchard Tract, are in the water and drainage shed of Walton Lake and in the immediate vicinity of the Auchard Tract is evidence of such unconstitutional arbitrary and capricious actions by the Town Board in denying the Gryphon petition to expand the District to include and serve the Auchard Tract.

57. The factual conditions surrounding the Town Board's decision to grant outside user agreements and permits for the likes of the Dierna, Ajjan and Peluso-Trisci lots and that of the Auchard Tract as proposed to be developed by Gryphon are similar in all relevant aspects, i.e. in terms of location, the relief sought, the agency from which relief was sought, the purpose of the relief sought, and timing.

58. The similarity in circumstances between those set out in Gryphon's Petition to expand the District to include the Auchard Tract and those of the aforesaid outside user

agreements and permits and the difference in treatment by the Town Board as between the two are sufficiently close to exclude the possibility that the Town Board, in denying Gryphon's Petition, acted on the basis of mistake.

59. In the circumstances set forth herein the Town Board has denied Gryphon equal protection of the laws guaranteed to it by the Fourteenth Amendment.

## VI
## DAMAGES SUSTAINED

60. As a result of the Town's arbitrary denial of sewer service to the subject parcel Gryphon has been caused monetary damage as follows:

> (1) the loss of the value of the subject parcel approved with sewer service through the facilities of the District, i.e. seven building lots with sewer service as opposed to two building lots with septic systems, at approximately $750,000.00, and
>
> (2) the costs of engineering and legal services actually expended in pursuit of the development of the subject parcel with sewer service through the facilities of the District at approximately $100,000.00 for a total of approximately $850,000.00.

61. As a result of said denial of equal protection of the laws by the Town Gryphon has been damaged in the amount of approximately $850,000.00.

## VII
## DEMAND FOR JUDGMENT

**WHEREFORE** Gryphon demands judgment as follows:

> A. An award of compensatory damages against the Town in the amount of $850,000.00 with interest as allowed by law.
>
> B. An award of punitive damages in such amount as the jury may find appropriate under the circumstances.

15

C. An award of such costs, disbursements and fees, including legal fees, of this action as may be allowed by law.

D. Such other further and different relief as to this court may seem just and proper under the circumstances.

Dated: May 21, 2008

James G. Sweeney, P.C.

by _____
James G. Sweeney (JS 2399)
*Attorney for the Plaintiff*
One Harriman Square
P.O. Box 806
Goshen, NY 10924
Tel. No. (845) 291-1100